AO 108 (Rev. 06/09) Application for a Warrant to Seize Property Subject to Forfeiture

# UNITED STATES DISTRICT COURT
### for the
### Southern District of Ohio

In the Matter of the Seizure of )
*(Briefly describe the property to be seized)* )
All Cryptocurrency Stored in William Joseph Liston's ) Case No. 2:22-mj-359
Cryptocurrency Wallets Accessible Through )
Cryptocurrency Recovery Seed Phrases )

## APPLICATION FOR A WARRANT
## TO SEIZE PROPERTY SUBJECT TO FORFEITURE

I, a federal law enforcement officer or attorney for the government, request a seizure warrant and state under penalty of perjury that I have reason to believe that the following property in the _____Southern_____ District of _____Ohio_____ is subject to forfeiture to the United States of America under ___21 / 18___ U.S.C. § ___841 / 1956___ *(describe the property)*:

All cryptocurrency in William Joseph Liston's cryptocurrency storage wallets that is found after the government uses cryptocurrency recovery seed phrases that were previously seized during the execution a federal search warrant on Liston's Google account "WLISTON86@GMAIL.COM," that was issued by the U.S. District Court in the Southern District of Ohio on 02/18/2022 (2:22-mj-106), to recover his cryptocurrency wallets onto a government-controlled device and seize the funds.

The application is based on these facts:

SEE AFFIDAVIT ATTACHED HERETO AND INCORPORATED BY REFERENCE HEREIN

☑ Continued on the attached sheet.

_____
*Applicant's signature*

Justin Myers, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: ___05/20/2022___

_____
Elizabeth A. Preston Deavers
United States Magistrate Judge
*Judge's signature*

City and state: Columbus, Ohio

Elizabeth A. Preston Deavers, U.S. Magistrate Judge
*Printed name and title*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO

IN THE MATTER OF THE SEIZURE OF

**ALL CRYPTOCURRENCY STORED IN WILLIAM JOSEPH LISTON'S CRYPTOCURRENCY WALLETS ACCESSIBLE THROUGH CRYPTOCURRENCY RECOVERY SEED PHRASES**

Case No. ___2:22-mj-359___

## Affidavit in Support of a Seizure Warrant

I, Homeland Security Investigations (HSI) Columbus, Ohio, Special Agent (SA) Justin Myers, being first duly sworn, hereby depose and state as follows:

## Introduction

1. I submit this affidavit in support of an application for combined criminal and civil forfeiture seizure warrant to seize of all cryptocurrency in William Joseph LISTON's cryptocurrency storage wallets that is found after the government uses cryptocurrency recovery seed phrases that were previously seized during the execution a federal search warrant on LISTON's Google account "WLISTON86@GMAIL.COM," that was issued by the U.S. District Court in the Southern District of Ohio on 02/18/2022 (2:22-mj-106), to recover his cryptocurrency wallets onto a government-controlled device and seize the funds, hereafter referred to as SUBJECT ASSETS, believing evidence, fruits, and instrumentalities of violations associated with 21 United States Code (U.S.C.) Section (§) 841(a)(1) (knowingly or intentionally manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense a controlled substance) and 18 U.S.C. § 1956 (laundering of monetary instruments) are located therein.

2. I have been employed by HSI since June 2004. I gained experience through a bachelor's degree in Criminology, a master's degree in Forensic Science, completion of the Federal Criminal Investigator Training Program (CITP) and completion of the HSI

Investigations Academy. During CITP and the HSI Academy training, I was instructed in all phases of criminal investigation such as: Criminal Law, Search and Seizure, Field Enforcement Techniques, Firearms Proficiency, and Interviewing and Evidence. I have completed the HSI Cyber Undercover Training Course and the Advanced Cryptocurrency and Darknet Training Course. I am responsible for enforcing federal criminal statutes including, but not limited to, controlled substance violations, pursuant to 21 U.S.C. § 841(a)(1).

3. While employed as a Special Agent, I have conducted and participated in numerous investigations of criminal activity, including, but not limited to, controlled substance and financial violations. During the investigation of these cases, I have executed, or participated in the execution of, numerous search warrants and seized evidence of those violations.

## Purpose of Affidavit

4. As set forth below, I submit that there is probable cause to believe that the SUBJECT ASSETS are property constituting, or derived from, proceeds obtained, directly or indirectly, because of violations of 21 U.S.C. § 841(a)(1) and 18 U.S.C. 1956. The SUBJECT ASSETS are therefore subject to forfeiture to the United States under 21 U.S.C. § 853(a).

5. I further submit that there is probable cause to believe that the SUBJECT ASSETS constitute (1) moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished in exchange for a controlled substance, in violation of the Controlled Substances Act ("CSA"); (2) proceeds traceable to such an exchange; or (3) moneys, negotiable instruments, or securities used or intended to be used to facilitate a violation of the CSA. The SUBJECT ASSETS are therefore subject to forfeiture to the United States under 21 U.S.C. § 881(a)(6).

6. The facts set forth in this affidavit are based on my knowledge, experience, and investigation, as well as the knowledge, experience, and investigative findings of others. Since this affidavit being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I did not withhold any information or evidence that would negate probable cause. I have set forth only the facts believed

to be necessary to establish probable cause that the SUBJECT ASSETS contains evidence associated with violations of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 1956.

7. This affidavit is based upon my own personal observations, my training and experience, discussions with other agents who are familiar with this investigation, and information collected during this investigation through, among other things, witness interviews, law enforcement investigation reports, information obtained through searches, and public records.

## Forfeiture and Seizure Authority

8. As to civil forfeiture, under 21 U.S.C. § 881(a), "[t]he following shall be subject to forfeiture to the United States and no property right shall exist in them: . . . (6) All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter." Property subject to civil forfeiture under 21 U.S.C. § 881(a) may be seized pursuant to 18 U.S.C. § 981(b) [by 21 U.S.C. § 881(b)].

9. Pursuant to 18 U.S.C. § 981(a)(1)(A), "[a]ny property, real or personal, involved in a transaction in violation of [18 U.S.C. §§ 1956], or any property traceable to such property" is subject to forfeiture to the United States. Property subject to civil forfeiture under 18 U.S.C. § 981(a)(1) may be seized pursuant to 18 U.S.C. § 981(b).

10. As to criminal forfeiture, under 21 U.S.C. § 853(a), "[a]ny person convicted of a violation of this subchapter or subchapter II of this chapter punishable by imprisonment for more than one year shall forfeit to the United States, irrespective of any provision of State law [inter alia]—(1) any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation; [and] (2) any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation." As property subject to criminal forfeiture under 21 U.S.C. § 853(a), the SUBJECT

ASSETS may be seized pursuant to 21 U.S.C. § 853(f). Under 21 U.S.C. § 970, Section 853 applies in every respect to a violation of this subchapter punishable by imprisonment for more than one year, including violations of 21 U.S.C. § 963.

11. Under 18 U.S.C. § 982(a)(1), "[t]he court, in imposing sentence on a person convicted of an offense in violation of 18 U.S.C. §§ 1956 shall order that the person forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property." As property subject to criminal forfeiture under 18 U.S.C. § 982(a)(1), the SUBJECT ASSETS may be seized pursuant to 21 U.S.C. § 853(f) (by 18 U.S.C. § 982(b)(1).

12. With respect to seizure, 21 U.S.C. § 853(f) specifically provides that a court may issue a criminal seizure warrant when it "determines that there is probable cause to believe that the property to be seized would, in the event of conviction, be subject to forfeiture and that a[] [protective] order under [21 U.S.C. § 853(e)] may not be sufficient to assure the availability of the property for forfeiture." As set forth further below, there is a substantial risk that the SUBJECT ASSETS will be withdrawn, moved, dissipated, or otherwise become unavailable for forfeiture unless immediate steps are taken to secure them. I therefore submit that a protective order under 21 U.S.C. § 853(e) would not be sufficient to assure that the SUBJECT ASSETS will remain available for forfeiture.

13. Furthermore, pursuant to 18 U.S.C. § 981(b)(3), "[n]otwithstanding the provisions of rule 41(a) of the Federal Rules of Criminal Procedure, a seizure warrant may be issued pursuant to this subsection by a judicial officer in any district in which a forfeiture action against the property may be filed under section 1355(b) of title 28, and may be executed in any district in which the property is found, or transmitted to the central authority of any foreign state for service in accordance with any treaty or other international agreement."

14. In addition, 18 U.S.C. § 984 applies in any civil forfeiture action in which (1) the subject property is cash, monetary instruments in bearer form, funds deposited in an account in a financial institution, or precious metals; and (2) the forfeiture action is commenced not more than one year from the date of the offense. Under Section 984(a)(2), "[a]ny identical property

found in the same place or account as the property involved in the offense that is the basis for the forfeiture shall be subject to forfeiture under this section." Therefore, this affidavit need not demonstrate that the funds now on deposit in SUBJECT ASSETS are traceable directly to the offenses that are the basis for forfeiture (so long as the forfeiture is sought for other funds on deposit in the same accounts and the forfeiture action is commenced not more than one year from the date of the offense). I further submit that, to the extent that the funds now held within those accounts are not traceable to or involved in the illegal activity specified herein, the funds are identical property found in the same accounts as the property traceable to or involved in the specified offenses, rending the funds subject to forfeiture under 18 U.S.C. § 984.

15. Here, because the SUBJECT ASSETS may be easily withdrawn, transferred, dissipated, or otherwise made unavailable for forfeiture, a protective order may not be sufficient to ensure that the SUBJECT ASSETS remain available for forfeiture. For that reason, the United States seeks combined criminal and civil seizure warrants, authorizing law enforcement to seize the SUBJECT ASSETS and preserve them pending further forfeiture proceedings.

## Background on Cryptocurrency

16. Cryptocurrency (also known as digital currency) is generally defined as an electronically sourced unit of value that can be purchased with, sold for, or used as a substitute for fiat currency (*i.e.*, currency created and regulated by a government). Cryptocurrency is not issued by any government, bank, or company; it is instead generated and controlled through computer software operating on a decentralized peer-to-peer network. Cryptocurrency is not illegal in the United States.

17. There are many types of cryptocurrencies. Payments made with cryptocurrencies are recorded in a public ledger that is maintained by peer-to-peer verification (*i.e.*, a "blockchain") and is thus not maintained by a single administrator or entity. Cryptocurrencies are widely used to conduct both legitimate and unlawful business. For example, Microsoft accepts Bitcoin (BTC) as payment for Xbox games and services. On the other hand, BTC and other types of cryptocurrencies are the payment method used on Darknet marketplaces, websites on the dark web that offered drugs and other contraband for sale.

18. Individuals can acquire cryptocurrency through, for example, exchanges (*i.e.*, websites such as Coinbase, which is described further below, that allow individuals to purchase or sell cryptocurrencies in exchange for fiat currency or other cryptocurrencies), ATMs, or directly from other people. Individuals can also acquire cryptocurrencies by "mining." An individual can mine cryptocurrency by allowing his/her computing power to verify and record payments into the aforementioned public ledger. Individuals are rewarded for this task by receiving newly created units of a cryptocurrency.

19. Individuals can send and receive cryptocurrencies through peer-to-peer digital transactions or by using a third-party broker. Such transactions can be done on many types of computers, including laptop computers and smart phones.

20. Even though the public addresses of those engaging in cryptocurrency transactions are recorded on a public ledger, the true identities of the individuals or entities behind the public addresses are not recorded on the public ledger. If, however, an individual or entity is linked to a public address, it may be possible to determine what transactions were conducted by that individual or entity. Cryptocurrency-based transactions are therefore sometimes described as "pseudonymous," meaning that they are partially anonymous.

21. Cryptocurrency can be stored in digital "wallets." A wallet essentially stores the access code that allows an individual to conduct cryptocurrency transactions on the public ledger. To conduct transactions on the public ledger, an individual must use a public address (or "public key") and a private address (or "private key"). The public address can be analogized to a traditional bank account number, while the private key is like the password or PIN used to access that bank account.

22. Exchangers and users of cryptocurrency often store, and transact with, these cryptocurrencies in several ways, utilizing desktop, mobile, and online wallets; hardware devices; and paper wallets. Desktop, mobile, and online wallets are electronic in nature and can be stored on mobile devices (e.g., smart phones or tablets) or websites that users can access via a computer, smart phone, or any device that can search the internet. Wallets can also be stored on

external or removable media and hardware (such as USB thumb drives). In addition, paper wallets contain an address and a QR code[1] with the public and private key embedded in the code. Paper wallet keys are not stored digitally. Wallets can also be backed up into, for example, paper printouts, USB drives, or CDs, and accessed through a "seed phrase" (random words strung together in a phrase, also known as a "recovery phrase") or a complex password. Additional security safeguards for cryptocurrency wallets can include two-factor authorization (such as a password and a phrase). I also know that individuals possessing cryptocurrencies often have safeguards in place to ensure that their cryptocurrencies become further secured in the event that the cryptocurrencies become potentially vulnerable to seizure and/or unauthorized transfer.

23. Users of cryptocurrency exchange services can download a digital wallet application onto their smart phone. A user typically accesses the wallet application through inputting a user-generated PIN code or password. Users can store, receive, and transfer cryptocurrencies via the Bread, Blockchain and Coinbase applications.

24. Many cryptocurrency exchange websites indicate that they do not store or otherwise have access to their users' funds or the private keys that are necessary to access users' wallet applications. Rather, the private keys are stored on the device on which the application is installed (or any backup created by the user).

25. In light of the above information regarding the manner in which cryptocurrency can be stored, it does not appear that all companies can assist in seizing or otherwise restraining cryptocurrencies stored in the wallets they provide to users. Nevertheless, law enforcement could seize cryptocurrency from the user's wallet directly, such as by accessing the user's smart phone or other digital device housing the wallet, accessing the wallet, and transferring the cryptocurrency therein to a law enforcement-controlled wallet. Alternatively, where law enforcement has obtained the "seed phrase" for a wallet (see above), it may be able to use the seed phrase to recover or reconstitute the wallet on a different digital device and subsequently transfer cryptocurrencies held within the new wallet to a law enforcement-controlled wallet.

---

[1] A QR code is a matrix barcode that is a machine-readable optical label.

## Characteristics of Drug Traffickers

26.  Based on my training and experience, I know that drug traffickers often use any means available to them to transport narcotics. One common method of smuggling drugs is to ship narcotics via the United States Mails. In addition, I know that drug traffickers commonly maintain books, records, receipts, notes, ledgers, electronic data, and other items relating to the importation, transportation, ordering, purchase, and distribution of illegal drugs at their residence or at the location at which their trafficking activities are being conducted. I also know that drug traffickers use their registered vehicles to transport controlled substances.

27. I know that drug traffickers use drug proceeds to purchase houses, land, vehicles, precious metals, diamonds and other stones, jewelry, coins, financial instruments, and stocks and bonds. I also know that drug traffickers tend to keep a large amount of cash and drugs in safes or hidden within and their residence, vehicles, and remote storage sites, such as a storage rental facility.

28.  In connection with the transportation of drugs, I know that drug traffickers frequently maintain evidence of travel and other records required to arrange for the purchase and importation and distribution of such drugs, and keep tickets, notes, receipts, passports and other documents at their residence or the location where they conduct trafficking activities, including on their mobile devices, computers, and related electronic storage media. I know that drug traffickers maintain records and other documents related to the possession, shipment, tracking and delivery of illegal controlled substances at the location where their drug trafficking activities occur. I know that indicia of occupancy, residency, and ownership of premises, including but not limited to utility and telephone bills, canceled envelopes, rental, purchase or lease agreements, identification documents and keys are often maintained at such drug trafficking locations.

29. Further, I know that drug traffickers frequently know others involved in the trafficking of illegal substances, and address and/or telephone books, rolodex indicia, electronic organizers, telephone paging devices and the memory thereof, and papers, records or electronic data reflecting names, addresses, telephone numbers, pager numbers of co-conspirators, sources of drug supply and drug customers, and other items are frequently maintained by such traffickers which provide evidence of the identities of others involved in such trafficking.

30. I also know that drug traffickers frequently use aliases to conceal their identities, and often possess firearms and other weapons at the premises where they conduct drug trafficking to protect themselves and their controlled substances. Persons who traffic in drugs often maintain at their residences and other locations where they conduct drug trafficking activities unsold or undistributed supplies of controlled substances and other drugs, drug paraphernalia including chemical diluents, weighing scales, mixing bowls, glassine bags, spoons, which are utilized in the weighing and packaging of controlled substances.

31. I know that drug traffickers receiving narcotics through parcels often keep evidence associated with ordering the narcotics saved to their internet, Darknet and cloud-based accounts. Darknet accounts are internet accounts generally accessed through a secure a TOR browser and unavailable through the open web. Cloud accounts are accounts used to store information on remote servers, which are accessed using personal computing devices. Drug traffickers often pay for the narcotics using electronic-based currency, referred to as cryptocurrency. Drug traffickers often store the cryptocurrency on internet-based cryptocurrency exchanges and/or on electronic wallets kept on their personal computing devices or cold storage cryptocurrency devices.

## Summary of the Investigation

32.  During January of 2022, Central Ohio Cyber Drug Taskforce (COCDTF) investigators logged into the Darknet marketplace Dark0de Reborn to look for active drug vendors. Investigators located the vendor TRIPPY, who was selling bulk quantities of blotter/tab and liquid Lysergic Acid Diethylamide (LSD). LSD is a Schedule I controlled substance. TRIPPY is also referred to as TRIPPYDNM, TRIPPYTMG and TRIPPYOFFICIAL on other discontinued Darknet marketplaces and internet forums. TRIPPY is an established LSD vendor. TRIPPY's self-created and individually unique Pretty Good Privacy (PGP) public key was used to identify TRIPPY as the same vendor that operated on other discontinued Darknet marketplaces. PGP is an encryption program that provides cryptographic privacy and authentication for data communication. Established Darknet vendors generally use the same PGP public key throughout their existence to establish instant credibility when creating vendor accounts on new Darknet marketplaces. Information found on the website Recon, the Dark0de Reborn marketplace, and the AlphaBay Market provided the following transaction history associated with TRIPPY on Darknet marketplaces:  Dream Market (300 transactions), Empire Market (8,500 transactions), Wall St Market (100 transactions), Apollon Market (206 transactions), Nightmare Market (72 transactions), White House Market (978 transactions), Torrez Market (51 transactions), Dark0de Reborn (7,784 transactions), and AlphaBay Market (302 transactions).

33.  To date, investigators were able to associate a total of 19,572 Darknet transactions to TRIPPY. TRIPPY's most recent listings on Darknet marketplaces were for blotter/tab and liquid LSD. The blotter/tabs sold for one (1) tab at $2.00 each up to two thousand five hundred (2,500) tabs at $2,975.00. The liquid sold for one (1) bottle at $149.00 each up to ten (10) bottles at $2,275.00.

34.  TRIPPY's vendor site on Dark0de Reborn made several claims, to include:  TRIPPY has sold LSD since the 1990s. Early on, the LSD was sold through a network of drug dealers at various events. TRIPPY has sold products on eleven (11) different Darknet marketplaces and through direct sales since the year 2018. Products were shipped to buyers in the United States and beyond. TRIPPY has shipped somewhere between 22,000 through 23,000 parcels through

Darknet marketplaces and direct sales (sales made off Darknet marketplaces). TRIPPY refers to the Eastern time zone. TRIPPY has earned enough in funds for five lifetimes.

35. Blockchain analysis was conducted on withdraw addresses obtained from seized Darknet marketplace data. Investigators observed TRIPPY received an average of $136.96 per marketplace transaction into Bitcoin (BTC) wallets between July 14, 2020 and September 3, 2020. TRIPPY specifically listed on Dark0de Reborn that he has shipped up to 23,000 mail parcels through both Darknet marketplaces and direct sales. The $136.96 per transaction multiplied by 19,572 transactions conducted on Darknet marketplaces that are listed in paragraph 15 equate to an averaged estimated profit of $2,680,000.00. That leaves a remaining balance of 3,428 transactions through direct sales, which include another estimated profit of $470,000.00 from those sales. TRIPPY's total profit from drug proceeds is estimated at $3,150,000.00. That profit amount excludes the increase in BTC value overtime. BTC is a decentralized digital currency, without a central bank or single administrator, that can be sent from user to user on the peer-to-peer bitcoin network without the need for intermediaries.

36. Historical information provided through law enforcement seized Darknet marketplace data provided the following information: TRIPPY used the moniker TRIPPYDNM on the Wall St Market. A message TRIPPY sent to a customer stated packages are sent from the Northeast United States. TRIPPYDNM is the same TRIPPY that was on Dream Market and Nightmare Market. TRIPPY's Wall St Market vendor site sold LSD, 3,4-Methylenedioxy-Methamphetamine (MDMA) and Psilocybin Mushrooms, which are all Schedule I controlled substances.

37. Blockchain analysis conducted on TRIPPY Darknet withdraw addresses obtained from law enforcement seized Darknet marketplace data showed address 3JpCe5x6L9rg2m1k4riCXgy3vvEGUt149N belonged to a wallet cluster also containing the TRIPPY Darknet market withdraw address 3N8f4juGrKBFsBKHjCrx2JUoRdR9Y3ukw6. On April 19, 2020, a transaction was sent from Payward Ventures Inc / Kraken to address 3JpCe5x6L9rg2m1k4riCXgy3vvEGUt149N via transaction hash e53ec7e6d91fb022b63b0be54c86719761a67d1145a190d694db2821f8588aec.

38.  On January 19, investigators sent a subpoena to Payward Ventures Inc / Kraken requesting subscriber information and account history for the user associated with transaction hash e53ec7e6d91fb022b63b0be54c86719761a67d1145a190d694db2821f8588aec and address 3JpCe5x6L9rg2m1k4riCXgy3vvEGUt149N, as listed above. Information provided by Payward Ventures Inc / Kraken revealed that the transactions were attributed to the user William LISTON with a username of WLISTON. Records showed LISTON associated two bank accounts with his account belonging to Wells Fargo Bank and Alliant Credit Union. LISTON made thirty-three (33) withdrawals to Wells Fargo Bank and fourteen (14) withdrawals to Alliant Credit Union.

39.  Records showed LISTON's Payward Ventures Inc / Kraken account received the following deposits:  3,302.77652452 Monero (XMR) from July 5, 2019 through May 13, 2021; 24.89321977 BTC from July 5, 2019 through May 17, 2021; and 341,349 MakerDAO (DAI) from January 20, 2021 through January 24, 2022. XMR is digital currency known as a "privacy coin," a decentralized cryptocurrency which uses a public distributed ledger with privacy-enhancing technologies that obfuscate transactions to achieve anonymity and fungibility. Investigators know XMR is commonly used by drug trafficking organizations for this reason. DAI is a digital currency valued 1:1 with the U.S. Dollar.

40.  Records also showed LISTON withdrew numerous amounts of cryptocurrencies from his Payward Ventures Inc / Kraken account. The transactions included:  726,088.34 Zytara USD (ZUSD) from June 19, 2019 through January 24, 2022; 4.09835 BTC from January 10, 2020 through October 7, 2021; 493,708.62051 DAI from November 26, 2020 through July 5, 2021; and 334.12 XMR from February 9, 2021 through December 21, 2021. ZUSD is digital currency valued 1:1 with the US dollar.

41.  Blockchain analysis also showed LISTON's Payward Ventures Inc / Kraken account appear to have received BTC indirectly from external wallet clusters, which received BTC from the Darknet marketplace's Empire Market and Apollon Market. LISTON's Payward Ventures Inc / Kraken account received BTC from an external wallet indirectly, which received BTC from the Darknet marketplace Wall St Market. Direct and indirect transactions are determined through blockchain and cluster analysis. Cluster analysis provides the ability to trace transactions from

one identified cluster, also known as a wallet, to another identified cluster, or wallet, on the blockchain. Direct transactions indicate cryptocurrency was sent or received directly from an identified wallet. Indirect transactions indicate cryptocurrency was sent or received one or more hop(s) between one identified wallet to another identified wallet. LISTON's account also received BTC indirectly from a Wasabi Wallet. Wasabi is a cryptocurrency mixing service, which is used to mix potentially identifiable or "tainted" cryptocurrency funds with others to obscure the trail back to the fund's original source. This is usually done by pooling together source funds from multiple inputs for a large and random period, and then spitting them back out to destination addresses. As all the funds are lumped together and then distributed at random times making it extremely difficult to trace exact coins. Mixing services attempt to improve the anonymity of cryptocurrencies, usually BTC, and have been used to money launder cryptocurrency.

42.  Blockchain analysis was conducted on TRIPPY's Darknet withdraw addresses obtained from law enforcement seized marketplace data, specifically the BTC address 3PdMNPw7AqKrHXBBTgC7inSEo9MRA6Rw88. Investigators located the wallet cluster root address for 3PdMNPw7AqKrHXBBTgC7inSEo9MRA6Rw88 as 32YiE9DeNXt5SPodFiMs4mv57HzsZmKfGS. Blockchain analysis showed on April 13, 2019, the wallet cluster containing 3PdMNPw7AqKrHXBBTgC7inSEo9MRA6Rw88 sent 0.007592 BTC to Bitpay Inc via transaction 018651d1ddfa7e81b1aca0ed61ec85cc01a4ae1d7722cb42cee23397ec1d85a0.

43.  On January 19, 2022, investigators sent a subpoena to Bitpay Inc requesting transaction information for the Bitpay user associated with transaction 018651d1ddfa7e81b1aca0ed61ec85cc01a4ae1d7722cb42cee23397ec1d85a0. Information provided by Bitpay Inc. revealed the above listed transaction was conducted on April 13, 2019 and was attributed to Bitpay Merchant BitPay Visa® Load (USD-USA). The transaction information listed buyer email address STARR83187@GMAIL.COM and the Internet Protocol (IP) Address 2607:fb90:3d7:a766:63d0:3a9d:a57a:23e5, which is currently attributed to T-Mobile USA Inc.

44. An open web search associated the email address STARR83187@GMAIL.COM with Christina Starr MOORE of 800 Isabelle Isle, # 305, Dover, Delaware 19904. Law enforcement database searches indicated that William Joseph LISTON resided there with MOORE. They have also used the following addresses: 3212 NE 12th Street, # 403, Pompano Beach, Florida 33062; 34 North Flack Avenue, Frederica, Delaware 19946; 106 Logan Drive, Dover, Delaware 19901; and 17753 Marvel Road, Marydel, Maryland 21649 (LISTON and MOORE's current address). State of Maryland property records list LISTON and MOORE as the current owners of the 17753 Marvel Road address, which they purchased new on October 20, 2021. Both subjects are listed on the deed. The entire property is free of liens. The 17753 Marvel Road address is described as a two-story single-family house with an attached two-car garage and a long gravel driveway. The walls to the outside of the structure are covered by light-colored siding. The front door is painted the color turquois. The number 17753 is posted on the black mailbox at the beginning of the driveway.

45. Additional open web searches indicated LISTON uses the email address WLISTON86@GMAIL.COM. That email address is linked to the moniker EMPIREBOARDS on the internet website LocalBitcoins.com, which is used to buy/sell cryptocurrency from/to individual users. The transaction fees are generally extremely high for using LocalBitcoins.com since individuals can sell their cryptocurrency for cash to remain anonymous.

46. A search on the internet website Reddit listed multiple posts by a user using the moniker EMPIREBOARDS. The posts indicated EMPIREBOARDS is familiar with producing and testing LSD; discusses MDMA and weed; understands the importance of using a liquid dosing machine; owns cryptocurrency Ledgers; owns two BMWs (X5 and 435i) and one Corvette (Z06); has a fiancé that is employed by a hospital in Dover, Delaware; was employed as a bartender in Florida and Maryland; has an S21 Samsung phone; is familiar with express mail shipping procedures and the privacy cryptocurrencies Monero (XMR) and Litecoin (LTC); promotes buying products from the Darknet vendor TRIPPY; that TRIPPY may also go by TRIPPYDNM; and is a self-made millionaire and that ninety (90) percent of net worth is in cryptocurrency. Cryptocurrency Ledgers are cold storage devices used to store cryptocurrency offline.

47. Law enforcement databases, open-source information, and information received from subpoenas confirm LISTON owns a 2022 Indian Motorcycle (VIN - 56KRZS250N3174166), 2016 BMW X5 (VIN -5UXKR6C57G0J82913), a 2015 BMW 435I (VIN - WBA3R1C59FK194943), a 2003 Corvette Z06 (VIN - 1G1YY12S035116170). LISTON has purchased two cryptocurrency Ledgers (purchased on 03/26/2019 and 04/24/2020), has resided in Florida, Maryland and Delaware, and that the BMW X5 was seen parked at Kent General Hospital in Dover on numerous occasions. Based on all available information LISTON and EMPIREBOARDS appear to be one in the same.

48. On July 24, 2020, TRIPPY created a post on the internet website Majestic Garden discussing the recent purchase of an automatic lab dosing machine that can provide exact volumes/doses to LSD blotters 12x-15x faster. TRIPPY mentions that the machine is "designed to dispense aliquots of fluid/gel samples into semi-standardized laboratory well plates." As stated earlier, EMPIREBOARDS posted a comment on the website Reddit regarding the importance of using a dosing machine.

49. U.S. Department of Homeland Security database searches revealed that U.S. Customs and Border Protection (CBP) seized an international parcel on September 19, 2018, that was inbound from the country of Germany and scheduled to be delivered to William LISTON at the 34 North Flack Avenue address. The parcel contained nine (9) grams of MDMA. As stated earlier, TRIPPY previously sold MDMA on a Darknet marketplaces.

50. On January 24, 2022, investigators sent a subpoena to the cryptocurrency exchange Coinbase requesting account information associated with LISTON and MOORE. Coinbase responded by providing information for four (4) accounts associated with LISTON and one (1) account associated with MOORE. LISTON's accounts listed the email address WLISTON@GMAIL.COM, the addresses at 34 North Flack Avenue and 3212 NE 12th Street, # 403, credit cards belonging to him and MOORE, 40.71 BTC transacted and the phone number 302-310-2699 that is assigned by T-Mobile USA Inc. The IP Address associated with the BitPay transaction on April 13, 2019 listed above resolves to T-Mobile USA Inc. Coinbase provided a photo of a driver's license issued by the State of Delaware that LISTON uploaded into their

system. Blockchain analysis conducted on LISTON's Coinbase accounts revealed transactions with the following Darknet marketplaces:  seven (7) transactions to Evolution worth $1,251.00; twenty-four (24) transactions to Agora worth $3,188.00; the (10) transactions to Abraxas Market worth $2904.00; and eight (8) transactions to Black Bank Market worth $1,538.00. Results from a separate subpoena confirmed that LISTON subscribes to cellular phone service through Mint Mobile, which is an affiliate of T-Mobile USA Inc. LISTON's phone number is listed at 302-310-2699. The mobile phone assigned to the number is a Samsung Galaxy S21 5G/Android, which runs on software created by Google. As stated previously, the user of EMPIREBOARDS stated he/she owns an S21 Samsung phone.

51.  MOORE's Coinbase account listed the email address STARR83187@GMAIL.COM, the address 3212 NE 12th Street, # 403, a credit card belonging to her, and 1.8 BTC transacted. Coinbase provided a photo of a driver's license issued by the State of Delaware that MOORE uploaded into their system. Blockchain analysis conducted on MOORE's Coinbase account revealed transactions with the following Darknet marketplaces: one (1) transaction to Black Bank Market worth $98.70 and two (2) transactions to Abraxas worth $322.11.

52.  On January 24, 2022, investigators sent a subpoena to Google LLC to request subscriber information associated with WLISTON86@GMAIL.COM and STARR83187@GMAIL.COM. Goggle LLC responded with subscriber information for both accounts. WLISTON86@GMAIL.COM was created on July 11, 2011 under the name Will LISTON. The recovery email is listed as STARR83187@GMAIL.COM. LISTON's Google Pay information that is associated with his Google account listed the 3212 NE 12th Street # 403 and 34 North Flack Avenue addresses. The Google Pay account also listed the name Christina MOORE under addresses and billing instruments. STARR83187@GMAIL.COM was created on April 07, 2014 under the name Christina MOORE. Google Pay information that is associated with her Google account listed the 34 North Flack Avenue address. The Google Pay account also listed the name William LISTON under the addresses and billing instruments. Both accounts show the users enabled phone backup services to their Google account.

53.   On January 28, 2022, investigators sent a subpoena to the company's eBay Inc. and PayPal Inc. requesting subscriber and account activity information for LISTON and MOORE. Both companies provided the same information, as up until the year 2021 PayPal handled the financial transactions for items purchased and sold on eBay. The information provided by the companies listed the following for LISTON:  email accounts WLISTON@MAIL.COM and WLISTON86@GMAIL.COM, phone number 302-310-2699 and the 800 Isabelle Isle and 34 North Flack Avenue addresses. They listed the following for MOORE:  email account's STARR83187@GMAIL.COM and CHRISTINA.MOORE@PROTONMAIL.COM, phone number 302-310-9487 and the 34 North Flack Avenue address. LISTON had several suspicious transactions to include the purchase of mushroom cultivation kits, food dehydrator sheets, an air purifier, a heat bag sealing machine, a chemical dosing machine and large quantities of Big Bend postage stamps, mylar bags, U.S. Postal Service tracking labels, shipping address labels and other shipping supplies. Darknet vendors commonly purchase Big Bend postage stamps in bulk amounts through eBay or by using cash at U.S. post offices to avoid detection when sending United States Postal Service (USPS) mail parcels containing contraband through U.S. Mails.

54.   On February 07, 2022, investigators conducted a controlled drug buy of LSD from TRIPPY using BTC through Dark0de Reborn. Investigators purchased "lsd * owlsey * 100 tabs * 125ug * usa" for a total of $215.27. The mail parcel arrived in Columbus, Ohio on February 14, 2022, which is in the Southern District of Ohio. USPS tracking information confirmed the mail parcel was mailed from Marydel, Maryland (USPS tracking # 9405536895232957694638). The post office in Marydel is located approximately five minutes away from the 17753 Marvel Road address. Investigators seized the mail parcel, which was sent to the Ohio Bureau of Investigation (BCI) Forensic Laboratory for analysis. The BCI Forensic Laboratory confirmed that the contents of the mail parcel contain two sheets of paper perforated into a total of one-hundred and four squares - 1.16 g +/- 0.05 g - found to contain LSD in solid form.

55.   On February 10, 2022, investigators conducted a second controlled drug buy of LSD from TRIPPY using BTC through Dark0de Reborn. Investigators purchased "lsd * 50 tabs * 175ug * prism by trippy * usa" for a total of $174.07. The mail parcel arrived in Hilliard, Ohio on February 19, 2022, which is in the Southern District of Ohio. USPS tracking information

confirmed the mail parcel was mailed from Dover, Delaware (USPS tracking # 9114902307224935647594). Dover is located approximately 20 minutes away from the 17753 Marvel Road address. Investigators seized the mail parcel, which was sent to the BCI Forensic Laboratory for analysis. The BCI Forensic Laboratory confirmed that the that the contents of the mail parcel contain paper perforated into fifty squares - 0.56 g +/- 0.05 g - found to contain LSD in solid form.

56. On February 18, 2022, investigators obtained a federal search warrant through the U.S. District Court in the Southern District of Ohio to search the contents of the Google account's WLISTON86@GMAIL.COM and STARR83187@GMAIL.COM. The warrant was sent to Google on the same day. Google responded to the warrant by providing the following information for both accounts: subscriber information, email records, contacts, and stored photos. Google confirmed that the subscriber of WLISTON86@GMAIL.COM is Will LISTON and the subscriber of STARR83187@GMAIL.COM is Christina MOORE.

57. Email and photo content found in Google account WLISTON86@GMAIL.COM (LISTON) revealed the following: screenshots on January 19, 2019 of the import/creation of the PGP Key associated with TRIPPYDNM; photos of ordering an unknown amount of Oxycodone 30mg tablets on January 27, 2013 through the Darknet marketplace Silk Road from the vendor PEELS4U; photos of a psychedelic mushroom grow from December 27, 2018 through March 20, 2019; the ordering of an unknown product on February 28, 2019 from the company Shroom Supply scheduled to be shipped to William LISTON at the 34 North Flack Avenue address; subscriptions to the cryptocurrency mixing databases Coinmix and Coinjoin; photos from March 12, 2019 through April 04, 2019 depicting various USPS Priority Mail and First Class parcels with labels containing various names and shipping locations throughout the United States; photos of USACONNECT forum discussion on April 28, 2019 regarding ordering an unknown amount of MDMA from an unknown vendor through the Darknet marketplace Empire Market scheduled to be shipped to William LISTON at the 34 North Flack Avenue address; a photo on December 16, 2019 of a small clear liquid vial containing a label stating, "TRIPPY's LSD" that was being held by an unidentified person wearing gloves (cannot see person's face in the photo); photos of the TRIPPYDNM user account on January 29, 2020 utilizing the Darknet marketplace Apollon

Market; photos depicting the username TRIPPY@TRIPPYDNM.COM ordering 30x Suboxone pills on March 25, 2020 from the vendor JOE_ROGAN70 through an unknown website or Darknet marketplace scheduled to be shipped to William LISTON at the 34 North Flack Avenue address; photos of the TRIPPY user account on April 04, 2020 utilizing an unknown website that appears to be a Darknet Marketplace; photos of the TRIPPYDNM user account on August 14, 2020 utilizing the Darknet marketplace Empire Market; photos from October 15, 2021 through November 27, 2021 of distribution amounts of suspected MDMA powder; photos from 2021 depicting a desktop gaming computer, computer monitor and a color printer; a photo of a receipt for Sentinel Self Storage in Dover; a video showing the inside of the 17753 Marvel Road address; and photos of three different recovery seed phrases that appear to be associated with cold storage cryptocurrency wallets.

58. Email and photo content found in Google account STARR83187@GMAIL.COM (MOORE) revealed the following: email sent to WLISTON86@GMAIL.COM on May 03, 2019 of a photo of a bag of pills (pills were pink in color and each contained the face of Jigsaw from the movie Saw that are known to be Ecstasy - Schedule I controlled substance); an email sent to WLISTON86@GMAIL.COM containing a public PGP key that was identified as directly associated with the Darknet vendor name's TRIPPY and TRIPPYDNM; and a photos of employment applications associated with Bayhealth Medical Center / Kent in Dover.

59. On March 04, 2022, investigators sent two subpoenas to Wells Fargo Bank and Alliant Credit Union requesting bank account information for both LISTON and MOORE. Both financial institutions responded by providing information on LISTON. Neither financial institution found any accounts associated with MOORE.

60. Records received from Wells Fargo Bank listed an everyday checking account, investment portfolio checking account, and a separate investment account associated with LISTON. Wells Fargo Bank provided records from July 19, 2019 through February 28, 2022 for those accounts, which are all currently active. The everyday checking account had a balance of $9,153.54 as of February 15, 2022, the investment portfolio checking account had a balance of

$26,935.43 as of February 28, 2022, and the separate investment account had a balance of $54,804.85 as of February 28, 2022.

61. Records from the Wells Fargo Bank everyday checking account listed the following suspicious wire transactions, automated teller machine (ATM) cash deposits, check payments, and fund transfers: ten (10) inbound wire transactions totaling $97,664.45 from July 05, 2019 through August 14, 2020 from Evolve Bank & Trust; one (1) outbound wire transaction totaling $9,510.00 on August 13, 2019 to TD Bank, NA; two (2) inbound wire transactions totaling $10,523.09 from April 30, 2020 through August 14, 2020 from Gemini Trust Co LLC that is associated with the Gemini cryptocurrency exchange; seven (7) inbound wire transactions totaling $25,842.97 from April 30, 2020 through February 09, 2021 from Prime Trust LLC that is associated with the Binance cryptocurrency exchange; twenty-nine (29) inbound wire transactions totaling $511,742.30 from August 14, 2020 through February 11, 2022 from Payward Ventures Inc, which is associated with the Kraken cryptocurrency exchange; one (1) outbound wire transaction totaling $447,862.27 on October 18, 2021 to Richard and Thompson LLP for the purchase of the 17753 Marvel Road address; ten (10) ATM cash deposits totaling $6,300.00 from November 15, 2019 through March 26, 2020; one (1) check payment on October 31, 2019 to CarMax totaling $42,500.00 for the purchase of a BMW X5; four (4) check payment from July 17, 2020 through November 09, 2020 totaling $8,850.00 to Fidelity Investments; one (1) check payment on February 18, 2021 totaling $20,000.00 for the purchase of a Corvette; one (1) check payment on October 19, 2021 to Thompson and Richard LLP totaling $7,500.00 for earnest money associated with the 17753 Marvel Road address; and one (1) funds transfer from the everyday checking account to the Wells Fargo Bank investment account totaling $5,000.00.

62. Records from the Wells Fargo Bank investment portfolio checking account listed the following suspicious wire transactions: two (2) inbound wire transactions totaling $89,500.00 on February 17, 2022 from Payward Ventures Inc / Kraken and two (2) fund transfers to the Wells Fargo Bank investment account totaling $50,050.00.

63. Records received from Alliant Credit Union listed one account number for LISTON, which is associated with savings account ID 01 and checking account ID 40. Alliant Credit

Union provided records from October 01, 2020 through February 28, 2022 for those accounts, which are currently active. Savings account ID 01 had a balance of $43.62 and checking account ID 40 has a balance of $9,108.15 as of February 28, 2022. Records for the accounts list the following suspicious wire transactions: fourteen (14) inbound wire transactions totaling $68,470.21 from October 01, 2020 through January 24, 2022 from Payward Ventures Inc / Kraken.

64. Based on the records received from Wells Fargo Bank and Alliant Credit Union, investigators conducted further analysis of the Wells Fargo Bank withdrawal and deposit records to determine the source of the funds used to purchase LISTON's BMW X5, diamond engagement ring, Chevrolet Corvette, and the 17753 Marvel Road address. Wells Fargo Bank deposit records list two (2) deposits from Evolve Bank & Trust totaling $42,622.36, which are suspected of being used to fund the purchase of the BMW X5 on October 31, 2019. The transactions include: wire #191029154023 on October 29, 2019 for $19,454.19 and wire #191030189332 on October 30, 2019 for $23,168.17. Wells Fargo Bank deposit records list one (1) deposit from TD Bank NA totaling $9,510.00, which was used to fund the purchase of a diamond engagement ring on August 13, 2019. The transactions included wire # 190813147115 on August 13, 2019 for $9,510.00.

65. Wells Fargo Bank deposit records also list six (6) deposits from Payward Ventures Inc / Kraken totaling $16,079.37 and two (2) deposits from Prime Trust LLC totaling $5,673.97, which are suspected of being used to fund the purchase of the Chevrolet Corvette on February 18, 2021. The transactions include: wire #201014057025 from Payward Ventures Inc / Kraken for $2,931.00 on October, 14, 2020 for $2,931.00; wire #201019076418 from Payward Ventures Inc / Kraken on October 19, 2020 for $2,990.92; wire #201023054829 from Payward Ventures Inc / Kraken on October 23, 2020 for $2,494.30; wire #201027156050 from Payward Ventures Inc / Kraken on October 27, 2020 for $2,862.99; wire #201112129492 from Payward Ventures Inc / Kraken on November 12, 2020 for $2,906.10; wire #201127108750 for $2,958.97 from Prime Trust LLC on November 27, 2020 for $2,958.97; wire #210120139485 from Payward Ventures Inc / Kraken on January 20, 2021 for $1,894.06; and wire #210209130704 from Prime Trust LLC on February 09, 2021 for $2,715.00.

66.   Subpoenaed records received from Payward Ventures Inc / Kraken that are associated with LISTON's Kraken account list withdrawals that correspond directly with the wire transaction deposits made to his Wells Fargo Bank everyday checking account from October 14-27, 2020 and on November 12, 2020. Those funds from LISTON's Kraken account that were sent to his Wells Fargo Bank account on the dates listed above were funded through five (5) prior deposits into his Kraken account totaling 112.5 XMR. Payward Ventures Inc / Kraken records showed LISTON converted the 112.5 XMR into $14,242.34 prior to sending the funds to his Wells Fargo Bank account.

67.   Records from LISTON's Kraken account list a withdrawal that corresponds directly with the wire transaction deposit made to his Wells Fargo Bank everyday checking account on January 20, 2021. Those funds from LISTON's Kraken account that were sent to his Wells Fargo Bank account on the date listed above were funded through two (2) deposits totaling 4,300 DAI into Kraken. Records showed LISTON converted the 4,300 DAI, along with additional DAI already in the account, into $4,398.21 prior to sending the funds to his Wells Fargo Bank account.

68.   Blockchain analysis conducted on the Payward Ventures Inc / Kraken deposit addresses used by LISTON to receive the 4,300 DAI via nine (9) transactions, specifically Ethereum (ETH) addresses 0x06868f7818d69eaa68445db8513e581144230667 and 0xa43bb669773e676a5326f3c891a15e70acb86e06, showed these Kraken deposit addresses were funded via an unknown Binance.us cryptocurrency exchange account and LISTON's Gemini account on November 26, 2020. ETH cryptocurrency is a decentralized, open source blockchain with smart contract functionality.

69.   Wells Fargo Bank records list fourteen (14) deposits from Payward Ventures Inc / Kraken totaling $456,187.13, which are suspected of being used to fund the purchase of the 17753 Marvel Road address on October 18, 2021 and for the issuance of the check for the earnest money associated with the 17753 Marvel Road address on October 19, 2021. The transactions included:  wire #210512059906 on May 12, 2021 for $19,000.13; wire

#210712205814 on July 12, 2021 for $2,915.00; wire #210719149390 on July 19, 2021 for $24,995.00; wire #210812103437 on August 12, 2021 for $2,765.00; wire #210830208926 on August 30, 2021 for $8,015.00; wire #211007061905 on October 07, 2021 for $49,496.00; wire #211007071098 on October 07, 2021 for $49,496.00; wire #211008067131 on October 08, 2021 for $49,515.00; wire #211008078472 on October 08, 2021 for $49,515.00; wire #211012138387 on October, 12, 2021 for $49,515.00; wire #211012293967 on October 12, 2021 for $49,515.00; wire #211014076008 on October 14, 2021 for $49,515.00; wire #211014106502 on October 14, 2021 for $49,515.00; and wire #211019152342 on October 19, 2021 for $2,415.00.

70. Records from LISTON's Kraken account list withdrawals that correspond directly with the wire transaction deposits made to his Wells Fargo Bank everyday checking account from May 12, 2021 through October 19, 2021. Those funds from LISTON's Kraken account that were sent to his Wells Fargo Bank account on the date listed above were funded through three (3) deposits totaling 298,500 DAI, one deposit totaling 1,000 XMR, and one deposit totaling 4.20500799 BTC into Payward Ventures Inc / Kraken. Records showed LISTON converted the 298,500 DAI, 1,000 XMR, 4.20500799 BTC, along with additional cryptocurrency already in the account, into $669,395.57 prior to sending a portion of the funds to his Wells Fargo Bank account.

71. Blockchain analysis was conducted on the Payward Ventures Inc / Kraken deposit address, ETH address 0x456413368e06e2bc01ae50b74c233935ec861daf, used by LISTON to receive 19,000 DAI on May 11, 2021. Analysis showed these Payward Ventures Inc / Kraken deposit addresses were funded via Gemini and Binance.us accounts on November 26, 2020. No Payward Ventures Inc / Kraken deposit address could be found for the deposit of 270,000 DAI on September 01, 2021 and 9,500 DAI on October 19, 2021.

72. Subpoenaed records received from Gemini for LISTON's Gemini account show that on November 26, 2020 LISTON deposited 3.0 BTC into his account using BTC address 1M63hh8NdGtBuNR2vTEcuaDC2KwaZPQdKu, via transaction hash 7c440373862ef6a7d1025013f9723d3e6327394d1a692d820db1b9874ed9344c. LISTON converted the 3.0 BTC into $50,904.43 and purchased $41,054.43 worth of DAI. LISTON then

sent 49,528.536004 DAI from his Gemini account, a portion of which was received in his Kraken account. Blockchain analysis conducted on transaction hash 7c440373862ef6a7d1025013f9723d3e6327394d1a692d820db1b9874ed9344c showed the entire 3.0 BTC was received via Wasabi Wallet, which again a cryptocurrency mixing service.

73. Blockchain analysis was conducted on the Payward Ventures Inc / Kraken deposit address, BTC address 34BWVTPy7Ca3659wE1HLAPbv5BuQJqoomB, used by LISTON to receive 4.20500799 BTC on May 17, 2021. Analysis showed this BTC transaction was funded directly by Gemini, including: 2.0 BTC via transaction 09abc8589b13dd1db14f90fed734f3b89f67f9dd25d68f5f1d2979fd61ac4b99, 0.48571829 BTC from a wallet with exposure to Wasabi Wallet via transaction hash 5ea789cd8dc6a5e870da47a5ff0e6694eabf4cb30d7200cb773f531c7cb5757c, and 1.772666 BTC from a wallet suspected of being funded by Binance.us, via transaction hash e02c949850eca6c4ec3c1b6ba88aae7c0a5b986ef791ab30ffa5905ff21dbf79.

74. Subpoenaed records received from Gemini showed on May 13, 2021 LISTON deposited 2.0 BTC into his account using BTC address 1BRnCZ8w78EsowL9HJhgsbGPadKq3hcNfA, via transaction hash 12422a73a6edbcaa820fc1e6847bbca52a9f4e6e5ea55f79a8ca8e040fdc81bb. On the same day LISTON withdrew the 2.0 BTC to address bc1q3f08vmhkjnrl6s5cgce3e7mclgxf84y0ffrf0n, via transaction hash 09abc8589b13dd1db14f90fed734f3b89f67f9dd25d68f5f1d2979fd61ac4b99.

75. Blockchain analysis was conducted on transaction hashes 12422a73a6edbcaa820fc1e6847bbca52a9f4e6e5ea55f79a8ca8e040fdc81bb and 09abc8589b13dd1db14f90fed734f3b89f67f9dd25d68f5f1d2979fd61ac4b99. Analysis showed on February 10, 2021 LISTON received 3.5 BTC into his Kraken account, BTC address 31rSL2AemEPVxiUQu2jwuGWfdBy3nwgnBy. Analysis showed these funds were received from a wallet receiving funds from Wasabi Wallet. On May 8, 2021, LISTON sent 1.95165 BTC from his Kraken account to an intermediary wallet before sending 2.0 BTC into his Gemini account. On May 13, 2021, LISTON sent the 2.0 BTC to an intermediary wallet before sending the 2.0 BTC and an additional 2.20500799 BTC (4.20500799 BTC total) back to his Kraken

account, via transaction hash
e9d5dd427d17ea9ed17adaa7877d2e7d062e255accf30d1335f29a46c2461bd2. That happened
prior to using the funds to send U.S. Currency to Wells Fargo Bank to purchase the 17753
Marvel Road address.

76. On March 09, 2022, investigators sent two subpoenas to HSI Dover, Delaware to be
issued to Sentinel Self Storage (6080 North Dupont Highway, Dover, Delaware 19901) and
Bayhealth Medical Center / Kent, 640 South State Street, Dover, Delaware 19901). The
subpoenas requested customer information from Sentinel Self Storage for LISTON and
employment information from Bayhealth Medical Center / Kent for MOORE.

77. HSI Dover investigators served both subpoenas. Sentinel Self Storage confirmed
LISTON currently rents storage unit number 339 at the 6080 North Dupont Highway location.
His unit is approximately 5' x 10' in dimension. It is an interior unit within building number
three (3). The unit has a blue vertical-sliding access door with a user-installed lock. The letters
"339" are clearly displayed above the unit in white lettering on a blue background. LISTON
signed the customer agreement contract for this unit in January 2021. LISTON provided the 800
Isabelle Isle Apt 305 address, phone number 302-310-2699, and email address
WLISTON86@GMAIL.COM. LISTON listed MOORE as an authorized user. LISTON paid the
monthly fee via multiple credit cards. LISTON has not visited the unit since December 12, 2021.

78. Bayhealth Medical Center / Kent confirmed that MOORE was hired on September
19, 2011 as a Surgical Technologist at an hourly pay rate of $24.27. Her employment was
terminated on February 28, 2022. Moore listed her primary phone number as 302-310-9487, the
17753 Marvel Road address, and the email address
CHRISTINA.MOORE@PROTONMAIL.COM.

79. On March 17, 2022, investigators conducted a third controlled drug buy of LSD from
TRIPPY using BTC through the online messaging service Session. Investigators purchased two
(2) vials of West Coast Needlepoint LSD for a total of $279.00. The mail parcel arrived in
Hilliard, Ohio on March 25, 2022. USPS tracking information confirmed the mail parcel was

mailed from Dover, Delaware (USPS tracking # 9405536109361108272880). Dover is located approximately 20 minutes away from the 17753 Marvel Road address. Investigators seized the mail parcel, which was sent to the BCI Forensic Laboratory for analysis. The results are pending.

80. On March 22, 2022, investigators found drug listings on the darknet marketplace AlphaBay Market associated with TRIPPY. The listings contained photos of bulk amounts of LSD blotters/tabs and liquid vials. There appeared be thousands of tabs of LSD and a few dozen vials of liquid LSD. The photo with the LSD blotters/tabs contained a piece of paper dated March 14, 2022. The photo with the liquid vials of LSD contained an electronic device depicting the date January 06. The background in the photo containing the LSD blotters depicted a painted wall and floor trim that are identical to the painted walls and floor trim seen in a video found in LISTON's Google account during the execution of a federal search warrant on the account. The vials of liquid LSD displayed "Trippy's LSD," which was displayed on the vial of liquid LSD seen in a photo also found in LISTON's Google account during the execution of the federal search warrant on the account.

81. On March 30, 2022, investigators conducted a fourth controlled drug buy of LSD from TRIPPY using BTC using XMR through the Darknet marketplace ALPHABAY DNM. Investigators purchased "LSD TABS || 80ug || HUGE DISCOUNTS || EXPRESS AVAILABLE || TRIPPY IS USA BASED || 100 TAB MINIMUM" for a total of $169.95. The mail parcel arrived in Columbus, Ohio on April 02, 2022. USPS tracking information confirmed the mail parcel was mailed from Dover, Delaware (USPS tracking # 9405536109361147729772). Dover is located approximately 20 minutes away from the 17753 Marvel Road address. Investigators seized the mail parcel, which was sent to the BCI Forensic Laboratory for analysis. The results are pending.

82. On April 05, 2022, investigators conducted a fifth controlled drug buy of LSD from TRIPPY using BTC through the online messaging service Session. Investigators purchased five hundred (500) tabs of LSD for a total of $210.00. The mail parcel arrived in Hilliard, Ohio on April 11, 2022. USPS tracking information confirmed the mail parcel was mailed from Hartly, Delaware (USPS tracking # 9114902307224935648034). Hartly is located approximately 10

minutes away from the 17753 Marvel Road address. Investigators seized the mail parcel, which was sent to the BCI Forensic Laboratory for analysis. The results are pending.

83.   Investigators sent BTC to a cryptocurrency wallet provided by TRIPPY during the two controlled drug buys of LSD made on March 17, 2022 and April 5, 2022 with TRIPPY through the online messaging service Session. The wallet contained the receiving addresses' 3Lc1GMQtG5Ao1v8LhpAgVrZSM1FT2X7jHm and 35yxuzQ3yvhDHFZEXdcuAtYyrR7esMZGL3. Investigators conducted blockchain analysis of the wallet. Analysis showed from October 21, 2021 through April 25, 2022 that the wallet received 5.0238954 BTC (valued at over $216,000 at the time of transaction) via 292 deposits. Analysis further showed that the wallet received a small amount of BTC from Dark0de Reborn on December 23, 2021 via transaction hash 89d9e36d1e6655c6d6dd54532ddaad8a5ed95d7767753ce87e1842da712f164e. Blockchain analysis further showed that a portion of the BTC received in the wallet listed above were then sent to Wasabi.

84.   On April 20, 2022, investigators conducted surveillance of LISTON and MOORE using both physical and electronic techniques. LISTON and MOORE were both suspected of being at the 17753 Marvel Road address at the beginning of the surveillance, which was determined using Global Positioning Service (GPS) and cellular location information obtained from their mobile phones. The U.S. District Court in the Southern District of Ohio issued a federal search warrant on March 25, 2022 authorizing T-Mobile USA Inc to obtain location information for investigators from LISTON (302-310-2699) and MOORE's (302-310-9487) mobile phones for a period of thirty (30) days.

85.   Investigators observed LISTON's red BMW 435i (one of the TARGET VEHCILES) containing one (1) occupant depart the residence. The driver was identified as LISTON. Investigators pulled their physical surveillance units back and instead allowed the cellular ping to reveal LISTON's location. LISTON's phone revealed a location in Chestertown, Maryland. Specifically, LISTON was geolocated to the parking lot located at 711 Washington Avenue, Chestertown, Maryland. At this time, investigators re-engaged in physical surveillance of

LISTON and confirmed his presence on Washington Avenue in Chestertown. Investigators observed LISTON return to his residence. Investigators used the electronic surveillance technique for a portion of the surveillance to avoid detection.

86.  On the same day, a Delaware-based U.S. Postal Inspection Service (USPIS) Inspector contacted the USPS office located in Chestertown to request access to the blue USPS mailing boxes in the area. While waiting for the USPS supervisor, the mail from the USPS blue boxes were retrieved by the normal mail carrier and brought to the USPS office located in Chestertown. The USPIS Inspector examined the parcels from this mail carrier in accordance with their lawful authority. The USPIS Inspector immediately identified a stack of twenty (20) near-identical parcels as suspected of being placed by LISTON and temporarily detained them for further examination. This examination included photographic comparisons, initial investigative findings from indices, and coordination with other primary investigators. Investigators were not able to physically observe LISTON place the twenty (20) mail parcels into the USPS blue box, but later obtained camera footage from a nearby business that shows LISTON's BMW pull up to a USPS blue box at the location stated above. The occupant of the vehicle was seen dropping the mail parcels into the USPS blue box.

87.  Each of the twenty (20) mail parcels included the return address (sender) of "FROM ELISE THOMAS, 408 MORGNEC RD, CHESTERTOWN MD 21620".  A review of open-source information identified that the 408 Morgnec Road address is a series of apartment complexes. As such, the lack of a specific apartment number invalidates the legitimacy of this marker as being used for business as any real business would include a full, accurate address. Further, narcotic distributors routinely list partially real addresses to conceal their true identity and disassociate themselves with any electronic tracing. Government indices confirmed that no one by the first name "ELISE" or last name "THOMAS" is associated with any apartment unit in the 408 Morgnec Road complex. The postage stamps used on the mail parcels were the same type of green $1 USD Freedom and $8.95 USD Monument Valley stamps found attached to mail parcels received and seized by investigators through undercover drug buys from TRIPPY.

88. Based on this, the USPIS Inspector detained two (2) of the mail parcels for further examination via a federal search warrant. The parcels were identified as: USPS Priority Mail Flat Rate Envelope (tracking # 9114902307224962337307) and USPS Priority Mail Flat Rate Envelope (tracking # 9114902307224962337468). The USPIS obtained a federal search warrant from the U.S. District Court in the District of Maryland to open the mail parcels. The mail parcels contained an approximate total of 5.7 grams of blotters/tabs, which tested presumptive positive for LSD.

89. An investigative search revealed TRIPPY made a recent post on the Majestic Garden regarding where he obtained his LSD blotter paper. On April 26, 2022, TRIPPYTMG, AKA: TRIPPY, posted in thread: "Re: ✦✝✦ℂ✦✝✦ TrippyTMG ☆ Official Reviews ✦✝✦)✦✝✦", "I'm glad you folks liked the stealth and the larger tabs."…"We source those from a friend over in the EU and he's got a great selection of art. I particularly like them because you see less of that creators designs over here. Over the last few months we been rotating back and forth between both sizes - just depends on how much I have to lay that week and what I have available in the blotter art coffers. Anyways, thanks for the kind reviews, I really appreciate it, and hopefully you folks enjoy the products, --- Trippy"

90. CBP database records listed two (2) international mail parcels sent to LISTON. On October 24, 2021, LISTON received one parcel at the 800 Isabelle Isle address from the country of Germany manifested as "Artwork Collection," and one parcel on Oct 18, 2021 to the 800 Isabelle Isle address from China manifested as "Slicer Cutting." Investigators suspect the contents of both parcels contain blotter paper to create LSD tabs.

91. Results from a subpoena sent to PayPal Inc list ten (10) purchases from the business Key-Z Productions from December 13, 2019 through January 25, 2022 totaling $2,840.25. Nine (9) of the orders were transacted through LISTON's PayPal account. One (1) order was transacted through MOORE's PayPal account. Clearnet research associated the business to the sell of blotter paper.

## CONCLUSION

92. Based upon all the above facts, I believe LISTON and MOORE are directly associated with the Darknet drug vendor TRIPPY and are using their residence, vehicles, U.S. Mails, electronic computing and storage devices, and cryptocurrency to facilitate the purchase, manufacture, transportation, and distribution of controlled substances. Law enforcement seized Darknet marketplace data revealed a message posted by TRIPPY stating parcels are mailed from the Northeast United States. LISTON and MOORE reside in the state of Delaware, which is in the Northeast United States. CBP previously seized a mail parcel containing MDMA that was scheduled to be delivered to LISTON. TRIPPY sold MDMA before on Darknet marketplaces. The Reddit user EMPIREBOARDS discusses having knowledge of LSD, owning BMWs and Corvette, keeping net worth in cryptocurrency and the importance of using a dosing machine to create precise LSD. LISTON owns two BMWs and a Corvette and has transacted hundreds of thousands of dollars through his various cryptocurrency accounts.

93. TRIPPY posted a message on a Majestic Garden forum on July 24, 2020, discussing the purchase of a liquid/gel dosing machine. eBay/PayPal records show that on July 22, 2020, LISTON purchased a Rainin Pipet-Lite EA6 L300 E4 XLS Adjustable Spacer 6 Channel Pipette 20-300uL liquid dosing machine through eBay. LISTON also purchased large quantities of mylar bags, USPS Big Bend postage stamps, USPS tracking labels and blotter paper through eBay. All those items are commonly used by Darknet vendors to package and anonymously send mail parcels containing controlled substances.

94. Five (5) recent controlled LSD drug buys from TRIPPY were determined to be shipped through the USPS to the Southern District of Ohio from different locations that are approximately 5-20 minutes from LISTON and MOORE's residence in Maryland. All suspected controlled substances found in mail parcels to date that were seized during controlled drug buys were turned over to a forensic laboratory for testing. Those that have been tested were positive for LSD. Google account information obtained from LISTON and MOORE through a federal search warrant associated both subjects to the TRIPPY darknet moniker and the distribution of controlled substances. The information from Google also suggested LISTON is sending parcels to various individuals and addresses throughout the U.S. Recent surveillance revealed LISTON

leaving his residence with U.S. Mail parcels containing LSD, using his BMW 435i to transport the LSD, and then using U.S. Mails to send the LSD to various subjects throughout the U.S. LISTON appears to be using different USPS blue boxes to avoid detection.

95.   Blockchain analysis and subpoenaed records unveiled LISTON's crypto-currency exchange accounts received funds directly and indirectly from TRIPPY darknet withdrawal addresses obtained from law-enforcement seized marketplace data. Blockchain analysis showed LISTON's accounts appeared to have received BTC from Empire Market, Apollon Market, and Wall St Market.

96.   LISTON's cryptocurrency exchange accounts, specifically:  Kraken, Gemini, and Bitpay, Inc, appear to have received BTC from external wallets which had exposure to a Wasabi Wallet, which has a built-in cryptocurrency mixing service called CoinJoin. Coinbase accounts owned by LISTON and MOORE both contain multiple cryptocurrency transactions associated directly with Darknet marketplaces, which suggests both individuals are fully aware of the controlled substance transactions.

97.   LISTON used cryptocurrency exchanges to convert the cryptocurrency received from Wasabi Wallet into other types of cryptocurrencies that use a different Blockchain. This is a common method used to conceal the origins of funds, known by law enforcement as chain-hopping. Chain-hopping is a way for individuals to move funds between different cryptocurrencies, often in rapid succession, in attempt to obscure the ability for third parties to follow the movement of funds. Photos obtained from the federal search warrant executed on LISTON's Google account revealed photos of three different recovery seed phrases that appear to be associated with cold storage cryptocurrency wallets.

98.   LISTON used his multiple cryptocurrency accounts containing drug proceeds to launder funds to his fiat banking/investment accounts with Wells Fargo Bank, Alliant Credit Union, and Fidelity Investments in multiple transactions below $10,000. These transactions appeared to be conducted in a manner, and for the purpose of, evading the threshold reporting requirements of a domestic financial institution, commonly known as Structuring.

99. The movement of LISTON's cryptocurrency funds to purchase the Chevrolet Corvette, BMW X5, and the 17753 Marvel Road address coincides with an individual attempting to launder cryptocurrency/money by attempting to obscure the movement of funds on the blockchain via the usage of cryptocurrency mixing services, cryptocurrency chain-hopping, and the movement of funds between cryptocurrency exchanges which keeps the movement of funds off the public blockchain ledger.

100. Investigators have not found any records to suggest LISTON was lawfully employed at any time during the last several years. MOORE was employed earning a gross income of approximately $47,000.00 annually but was fired from her job during February of 2022. MOOREs earnings would not support the purchase of LISTON's two BMWs, Corvette, motorcycle, or the house they recently purchased. Investigators were able to show that a portion of LISTON and MOORE's cryptocurrency earnings came from selling controlled substances through Darknet marketplaces. Investigators cannot show that all of LISTON and MOORE's cryptocurrency proceeds are from Darknet marketplaces due to their use of cryptocurreny mixing services. Investigators found that LISTON and MOORE have profited an estimated $3,150,000.00 from selling controlled substances through Darknet marketplaces and direct sales. Investigators know that their cryptocurrency earnings were deposited into his Wells Fargo Bank, Alliant Credit Union, and Fidelity Investment accounts and used to purchase LISTON's BMW 435i, Chevrolet Corvette, a diamond engagement ring, and the 17753 Marvel Road address. Investigators believe LISTON also purchased the BMW X5 and motorcycle with cryptocurrency since he does not have another source of income.

101. Based on my training and experience and the facts as set forth in this affidavit, I believe there is probable cause to support that violations of Title 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 1956 were committed within SUBJECT ASSETS. The SUBJECT ASSETS are subject to seizure and forfeiture pursuant to 18 U.S.C. §§ 981(b), 984 and 21 U.S.C. §§ 853(a), 853(f), and 881(a)(6). I therefore respectfully request that the Court issue a warrant authorizing the seizure of SUBJECT ASSETS.

## REQUEST TO DELAY NOTICE

102. The United States requests authorization from the Court to authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized for a period of thirty (30) days pursuant to 18 U.S.C. § 3103a(b). Immediate notification may have an adverse result by seriously jeopardizing the ongoing investigation. Such a notification would give the asset owner an opportunity to remove funds from the account(s).



Justin Myers
Special Agent
Homeland Security Investigations

SUBSCRIBED AND SWORN before me on this 20th day of May, 2022.

Elizabeth A. Preston Deavers
United States Magistrate Judge